# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**JAMES LYONS,**
                      **Plaintiff**

**v.**                                                    **Civil Action No.**
                                                          **3:06CV35-J**

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
                      **Defendant**

## MEMORANDUM OPINION

This case presents plaintiff James Lyons' challenge to the decision of the Commissioner denying his claim to disability insurance benefits and supplemental security income payments. After examining the materials of record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the Commissioner's decision should be vacated and this matter remanded for further proceedings.

Mr. Lyons filed his applications in October of 2003, alleging that he had been unable to engage in any substantial gainful employment since October of 2000. After a hearing, the Administrative Law Judge ("ALJ") found that Mr. Lyons' borderline intellectual functioning, chronic obstructive pulmonary disease, hiatal hernia and hearing loss were severe impairments, but that they did not prevent him from performing his past relevant work as a factory worker or a farm worker.

The disability determination process consists of five steps. <u>Wyatt v. Secretary</u>, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is

adverse to the claimant terminates the process:

    1. The claimant must not be engaged in substantial gainful activity.

    2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking. 20 CFR Section 416.921.

    3. If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

    4. The claimant must be unable to do his or her past relevant work.

    5. If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs. Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

Mr. Lyons contends that the ALJ erred at Step 3, in failing to find that Mr. Lyons' mental retardation met the requirements of Listing 12.05 B or C. That Listing requires the claimant to establish "significantly subaverage general intellectual functioning with deficits in adaptive functioning." To satisfy the listing via subsection B, the claimant must demonstrate "a valid verbal, performance or full scale IQ of 59 or less"; alternatively, to satisfy the listing via subsection C, the claimant must demonstrate "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

Mr. Lyons did not complete fifth grade. He was held back twice. He acknowledged at

the hearing that he did not attend school very much, missing 90 to 148 days each year during his last three years of attending. Tr. 266. It appears undisputed that Mr. Lyons is functionally illiterate.

On March 26, 2004, Ollie C. Dennis, Certified Clinical Psychologist, conducted a psychological evaluation. Dr. Dennis opined that the results of the exam "probably represented a fair estimate of his functional ability with some adverse influence of resistance to guessing and limited persistence." Tr. 163. Dr. Dennis was unable to obtain useful results on the "Mini-Mult form of the MMPI" because Mr. Lyons "did not understand the nature of several of the items that were read to him." Tr. 165. On the WAIS-III,[1] Mr. Lyons attained a Verbal IQ score of 62, a Performance IQ score of 59, and a Full Scale IQ score of 58. Tr. 163. Dr. Dennis concluded that Mr. Lyons had very low cognitive ability, limited adaptive skills, and moderate to marked limitations in ability to understand and follow instructions, ability to sustain attention, and social insight and judgment. The psychologist concluded, "Mr. Lyons' ability to tolerate the stress and press of daily work is quite seriously limited." Tr. 165.

The reported IQ scores would appear to satisfy the Listing criteria, but the ALJ declined to accept them at face value because "the claimant has worked in the past as a mechanic helper and has generally functioned in the borderline intellectual domain, if not above." Tr. 22. The ALJ also pointed to Dr. Dennis's reference to the adverse influence from resistance to guessing, and to the fact that while Mr. Lyons could only do single digit addition in computational arithmetic, he could count money and make change. Finally, the ALJ stated, "The claimant's demeanor at the hearing did not reflect that he was mentally retarded." Tr. 22.

---

[1] Wechsler Adult Intelligence Scale, Third Edition.

The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") classifies IQ scores of 70 to 80 as "borderline mental retardation," and scores of 50 to 70 as "mild mental retardation." Thus, the ALJ rejected Mr. Lyons' IQ scores of 58 and 59, despite the professional psychologist's determination that the results were essentially valid, and further rejected the vocational expert's treatment of Mr. Lyons' functioning as being in the 60 to 70 range. Instead, the ALJ treated Mr. Lyons as functioning in the 70 to 80 range.

While the ALJ's factual determinations are entitled to considerable deference, they must be supported by substantial evidence. The ALJ is an adjudicator and is neither a medical expert nor a vocational expert. A claimant's work history may demonstrate functioning beyond what might be expected from her or his IQ testing, but in this case there is no evidence of such functioning. Indeed, the vocational expert, the person in the best position to determine the level of functioning represented by a given employment history, specifically testified, "It would appear that he would have intellectual functioning in the 60 to 70 range, which would be consistent with his work history." Tr. 268.

The ALJ's reference to Mr. Lyons' previous work as a mechanic helper suggests a level of functioning not supported by the evidence as to how the work was actually performed. Mr. Lyons testified that basically his job was changing oil and fixing flats, and that he knows nothing about mechanical work. Thus, there is some question as to whether the ALJ misunderstood the testimony or had chosen to reject it. The Court is also puzzled regarding the ALJ's statement, "The claimant's demeanor at the hearing did not reflect that he was mentally retarded." The opinion provides no objective details or explanation of what the fact-finder might have observed about demeanor, leaving open the possibility that the ALJ had invaded the province of the

medical expert. That is, an ALJ may properly observe that a witness showed no signs of having difficulty breathing, but is not allowed to express the medical opinion that the witness showed no signs of suffering from chronic obstructive pulmonary disease. Remand is necessary to permit the ALJ to clarify his findings in light of the appropriate evidentiary standards.

      An order in conformity has this day entered.

.